IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREEM J. HOWELL,            )<br>                              )<br>              Petitioner,   )<br>                              )<br>   v.                         )<br>                              )<br> DAVID RUNNELS, Warden,       )<br>                              )<br>              Respondent.    )<br> _____ ) | No. C 04-5449 MJJ (PR)<br><br>**ORDER DENYING PETITION<br>FOR A WRIT OF HABEAS<br>CORPUS** |

Petitioner, a California prisoner, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254.  The Court ordered respondent to show cause why the petition should not be granted on the basis of petitioner's cognizable claims.  Respondent filed an answer accompanied by a memorandum and exhibits contending that the petition should be denied.  Petitioner did not file a traverse.

### PROCEDURAL BACKGROUND

In 2002, petitioner was convicted in Santa Clara County of a drug offense, and was sentenced under California's "Three Strikes Law" to 25 years to life in state prison.  On appeal, the California Court of Appeal affirmed the conviction, and the petition for direct review to the California Supreme Court was denied.  A subsequent state habeas petition in the Santa Clara County Superior Court also failed.

### FACTUAL BACKGROUND

The following facts are set forth in the California Court of Appeal opinion:

> San Jose Police Officer Donald Guerra and several other officers formed a surveillance team to observe controlled buys of narcotics in the area of Fountain Alley between South First and South Second Street on September 13, 2001.  This area was selected because of its history of illegal narcotics transactions.  Several officers maintained contact with each other using two-way radio.  Officer Robert Harris was assigned to conduct an undercover buy of narcotics.  He obtained cash from the police department's "buy fund" for use in this investigation and photocopied the bills.  The

serial numbers of the bills were documented in a logbook, so that officers could later confirm that the same bills were received by the seller of the drugs.

Officer Harris previously contacted Sarah Zewdu during similar investigations and believed she could find drugs for him. He believed she had engaged in prostitution and was a crack cocaine addict. . . . Officer Harris approached Zewdu at the intersection of Fountain Alley and South First Street and asked her if she "wanted to party," to which she agreed. He asked her if she could "score a Twenty," which means to purchase a $20 rock of cocaine,[1] to which she also agreed. Officer Harris gave Zewdu $20 of the buy funds with which to purchase the cocaine. Zewdu said she would be back and left her shopping bags with Officer Harris while she walked down Fountain Alley towards South Second Street. Officer Harris called Sergeant Gordon Bowen on his cell phone to tell him what had occurred.

Officer Guerra watched the activities taking place around the intersection of Fountain Alley and South Second Street using binoculars. He was advised that Officer Harris had given Zewdu money with which to buy drugs, so Officer Guerra focused his attention on her as a subject of investigation. Zewdu walked up Fountain Alley from South First Street towards South Second Street, looked up the street and waved her hand in the air as if she were trying to get someone's attention. Sergeant Bowen, who was also watching the area as part of the investigation, advised Officer Guerra that another individual, later identified as defendant, appeared to be approaching Zewdu. Officer Guerra saw Zewdu hand defendant something.

Zewdu testified that she walked through Fountain Alley and asked defendant if she could "get one," to which he agreed. She gave defendant the $20 given to her by Officer Harris. Defendant spit a rock of cocaine out of his mouth, then handed it to Zewdu. Sergeant Bowen, who saw this transaction was qualified as an expert in cocaine sales, believed that his exchange was a sale of rock cocaine. Zewdu then headed back towards Fountain Alley. Sergeant Bowen and Officer Guerra saw defendant follow Zewdu towards the Alley shortly thereafter. Officer Guerra and Sergeant Bowen were both approximately 30 feet from the defendant and Zewdu with an unobstructed view of this transaction.

Officer Harris testified that Zewdu returned to him approximately two to four minutes after he went to get the cocaine. She told Officer Harris that she had "scored." During this conversation, about 30 seconds after Zewdu returned, defendant walked from Fountain Alley and interrupted Zewdu and Officer Harris. Defendant stated, " '[t]he word on the street is that your [*sic*] five-oh.' " "Five-oh" means a police officer in street jargon. Officer Harris responded that he was not an officer and had just been released from San Quentin. Officer Harris believed defendant challenged him as a security measure to avoid arrest.

Officer Harris and Zewdu walked away down another street, where he asked her to give him the cocaine because he thought the defendant might follow them. She spat the rock out of her mouth into her hand and put it in Officer Harris' shirt pocket.[2] It is common for drug dealers or couriers to carry rock cocaine wrapped in a small piece of plastic like a Hershey's kiss in their mouths so that they can swallow the contraband if they are detained by police. Officer Harris signaled to the observing officers that the case was complete and they arrived to arrest Zewdu.

Officer Guerra arrested defendant about two or three minutes after he was advised that Zewdu had been arrested. He found a roll of cash in defendant's left pocket, as well as a cell phone and a pager. The outermost bill in the roll of cash was

---

[1] A dose of rock cocaine had a street value of $20.

[2] The rock of cocaine and the plastic bindle in which it was wrapped were admitted into evidence.

the same $20 bill that Officer Harris had given to Zewdu to buy drugs. Defendant had a total of thirty-nine $20 bills, ten $10 bills, seven $5 bills and fifteen $1 bills. Defendant's possession of $930 in cash, the denomination of the bills, a cell phone and pager caused Officer Guerra to believe the defendant was engaged in the sale of illegal drugs. The rock that Officer Harris received from Zewdu tested positive for the presence of cocaine.

Within a week or 10 days prior to trial, defendant contacted Zewdu and asked her to testify that he merely exchanged two $10 bills with her for the $20 bill that she gave him. Zewdu was previously convicted in early 1999 of Health and Safety Code section 11352: selling or furnishing a controlled substance. She pleaded guilty with respect to this case to the charge of sale or furnishing of cocaine base, but did not receive any promise of lenience in exchange for her testimony.

**Defense Evidence**

Zewdu told a defense investigator that she waved to someone on South Second Street because she knows many people who frequent that area who would be offended if she did not wave to them. She told the investigator that Officer Harris gave her $20 to buy drugs, she went down Fountain Alley to South Second Street, gave defendant the $20, defendant spit something into his hand, which she took. She then returned to the bus stop where she had met Officer Harris, to whom she eventually gave the same drugs.

Defendant testified that he was walking to his car, which was parked in Fountain Alley when he ran into an old friend from high school, Billy Johnson. Officer Harris approached the two men and asked if they "got one," which defendant understood to be a request for drugs. Defendant told Officer Harris, "[M]an, get out of here, man." The two men were walking to defendant's car to exchange telephone numbers when Zewdu approached them. She asked Johnson, "hon, I need a change for this." Johnson asked where the groceries were, to which Zewdu replied that a friend of hers was watching them around the corner. She explained that the friend was loaning her $10, but she needed change for a $20 bill. Johnson did not have the requested change, so defendant gave her two $10 bills for the $20 that she wanted to exchange.

The two men followed Zewdu back down Fountain Alley. Johnson checked the grocery bags to see if the contents were still intact. Officer Harris then approached defendant and asked if there was going to be a problem. Defendant asked Officer Harris, "[W]hy, are you police or are you five-oh or something," because the officer was using intimidating body language. Officer Harris put his face up close to the defendant's and stated, "I'm not a police officer, you trying to get me hurt by spreading such a rumor like that around here." Defendant said he had just been released from San Quentin and did not want any trouble. Officer Harris stated that he too had just been released from San Quentin. Defendant then left, heading north on First Street towards Saint James Park. Defendant was arrested shortly thereafter.

People v. Howell, No. H025345, slip op. at 2-5 (Cal. Ct. App. Feb. 23, 2004) (hereinafter "Slip Op.").

## DISCUSSION

A.  Standard of Review

This Court may entertain a petition for a writ of habeas corpus submitted by an individual in custody pursuant to a state court judgment only if the custody violates the

3

United States Constitution, laws or treaties.  28 U.S.C. § 2254(a) (2005) (hereinafter "AEDPA"); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence unless the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d) (2005); Williams v. Taylor, 529 U.S. 362, 402-403 (2000).

A state court decision qualifies as "contrary to" federal law if it directly contravenes a Supreme Court decision on a question of law, or reaches a conclusion converse to a Supreme Court  decision with materially indistinguishable facts.  Id. at 413.  A state court decision involves an "unreasonable application" of federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 412-413.  In determining whether a state court's decision contravenes or unreasonably applies clearly established federal law, a federal court examines the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision.  LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  In this case, the highest state court to issue a reasoned opinion was the California Court of Appeal denying petitioner's direct appeal.

B.   Legal Claims

**1.   Exclusion of Evidence**

Petitioner claims that the trial court violated his rights under the Confrontation Clause and the Due Process Clause in excluding Officer Rodriguez's testimony that, as a result of Zewdu's 1998 arrest for selling cocaine, she had prior knowledge of the undercover police operation.  In denying this claim, the California Court of Appeal addressed whether the exclusion of evidence violated petitioner's right to confront a witness, but not whether it

4

violated his right to due process.

Regarding the exclusion of evidence, the Court of Appeal found that:

> Defendant sought to admit testimony of San Jose Police Officer Alfonso Rodriguez regarding the arrest of Zewdu in September of 1998, approximately three years before the instant case. This evidence was offered for the purpose of showing Zewdu's "consciousness of the danger of dealing with undercover officers and accepting a twenty [dollar bill," "[t]o show that she was arrested after she received the twenty dollar bill from an undercover buy officer. . . . [S]he eventually, it's inferred, finds out that it was an undercover buy officer. And therefore, she may be alerted in the future as to the necessity to be cautious in dealing with unknown strangers on the street when you're approached." Defendant further argued that the circumstances of Zewdu's prior arrest show that whatever lack of mental sophistication on her part, regarding which Officer Harris testified, would not bar her from engaging in street-level sales of rock cocaine.
> . . .
> At a hearing held pursuant to Evidence Code section 402,[] Officer Rodriguez testified that as a part of an undercover investigation of drug sales he purchased rock cocaine from Zewdu. He asked her if she had "one"[] and gave Zewdu $20 of recorded police buy funds. She spat out a rock of cocaine enclosed in a baggie. Office Rodriguez complained that the rock was too small, and Zewdu spit out three or four more rocks to show him. After this transaction, other police officers watched Zewdu as she contacted about eight to 10 different people in such locations as a laundromat, a Pizza Hut, and walking along Santa Clara Street. She was later arrested. The recorded $20 used to purchase the cocaine from Zewdu was never recovered.
> . . .
> The court ruled that the facts of Zewdu's prior arrest for the sale of rock cocaine were irrelevant with respect to the instant case. This was so because the conclusion that she was aware of the details of police undercover narcotics purchasing procedures was a "quantum leap of speculation" from the evidence that trial counsel had actually presented. The Court further ruled that the facts of the prior arrest were more prejudicial than probative of relevant matters and would consume an undue amount of time.[]

(Slip op. at 6-8) (footnotes omitted).

### a. Confrontation Clause

Petitioner argues that he was denied the right to confront prosecution witness, Zewdu, when the trial court precluded the defense from presenting Officer Alfonso Rodriguez's testimony regarding the details of Zewdu's prior drug arrest. Petitioner contends that Officer Rodriguez's testimony would have challenged Zewdu's credibility. In a criminal prosecution, a defendant has a constitutional right to confront witnesses against him. See Pointer v. Texas, 380 U.S. 400, 406-407 (1965). Undue restrictions on a criminal defendant's confrontation of a prosecution witness may deprive him of this right. Davis v. Alaska, U.S.

308, 318 (1974).  The right to cross-examine includes the opportunity to show not only that a witness is biased, but also that the testimony is exaggerated or otherwise unbelievable. Fowler v. Sacramento County Sheriff's Dep't, 421 F.3d 1027, 1035 (9th Cir. 2005) (quoting Pennsylvania v. Ritchie, 480 U.S. 39, 51-52 (1987) (plurality)).  Even if cross-examination is not certain to affect the jury's assessment of the witness's reliability or credibility it may implicate the Sixth Amendment right to confrontation if "a jury 'might reasonably' have questioned the witness's reliability or credibility in light of the cross-examination." Id. (quoting Van Arsdall, 475 U.S. at 679).  However, not every restriction on a defendant's desired method of confronting a witness's credibility is a constitutional violation.  See Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam). The Confrontation Clause does not prevent a trial judge from placing reasonable limits on relevant evidence based on concerns of harassment, prejudice, confusion of issues, witness safety or interrogation that is repetitive or only marginally relevant.  See Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

The California Court of Appeal found no violation of the Confrontation Clause.  The court noted that a defendant's rights may be restricted to accommodate other legitimate interests "so long as the restrictions are not 'arbitrary or disproportionate to the interests they serve.'"  (Slip. Op. at 9-10 (quoting Rock v. Arkansas, 483 U.S. 44, 55 (1987)). In applying those principles, the court held that:

> Contrary to defendant's claim, Officer Rodriguez's testimony did not "establish that Zewdu was the dealer and she went to appellant to exchange [O]fficer Harris' marked twenty-dollar bill for two unmarked tens, and not to purchase drugs, as she claimed." Here, the court correctly observed that Officer Rodriguez's section 402 hearing testimony did not support the conclusion that Zewdu knew that he or any other person to whom she sold cocaine was an undercover police officer or that she had received recorded police funds during the previous drug sale.  Because Zewdu pleaded guilty to the charge, there was never a preliminary hearing.  Officer Rodrigeuz thus never revealed his identity as an undercover officer, and the prosecutor was not required to present evidence that the $20 bill Officer Rodriguez gave Zewdu came from police funds or was recorded.  The fact that Zewdu had many interactions with other individuals between her contact with Officer Rodriguez and her arrest decreased the likelihood that she knew any particular individual was an undercover officer. Similarly, the number of activities in which she engaged after her sale of cocaine to Officer Rodriguez decreased the likelihood that she would have determined what techniques the police had used to collect evidence of her drug sales.

(Slip Op. at 10-11.)  The Court of Appeal also found that any error made did not contribute to the defendant's guilty verdict.  The court relied on Supreme Court precedent in <u>Olden v. Kentucky</u>, 488 U.S. 227, 232 (1988), and <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967), to find that had the jury been presented with the desired testimony, it was "unlikely that it would have concluded that due to her previous arrest, Zewdu engaged in a practice of exchanging the bills she received from drug sales in order to cast the appearance of guilt away from herself."  (Slip Op. at 10-11.)

Where, as here, the state court correctly identifies federal legal rules, the federal court must ask whether the state court applied them unreasonably to the facts.  See <u>Lockhart v. Terhune</u>, 250 F.3d 1223, 1232 (9th Cir. 2001).  Here, the jury knew about Zewdu's prior conviction of selling or furnishing drugs, and they also knew that she was charged with the same offense in this current case.  From this information, the jury could infer that Zewdu was capable of selling drugs.  Furthermore, the details of Zewdu's prior arrest do not indicate that she knew she sold drugs to Officer Rodriguez or any other undercover officer, or that she knew or suspected the police used marked bills in their undercover operations.

The appellate court reasonably determined that the impeachment evidence did not support the conclusion for which it was offered, and that the evidence was more prejudicial to the case than probative of material questions.  As a result, this Court finds that the state court's conclusion that any error was harmless is neither contrary to nor an unreasonable application of clearly established federal law.  The Court now turns to petitioner's claim that his due process rights were violated.

**b. Due Process**

Petitioner claims the exclusion of Officer Rodriguez's testimony denied him a right to fair trial and to present a defense.  Cases interpreting the constitutional right to due process allow the exclusion of evidence where its "probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." <u>Holmes v. South Carolina,</u> 126 S. Ct. 1727, 1732 (2006).  In these cases, the burden of proof rests on the defendant to demonstrate that the principle violated by the evidentiary rule "is so rooted in the traditions and conscience of our people as to be ranked as fundamental."

7

Montana v. Egelhoff, 518 U.S. 27, 47 (1996).  Furthermore, the Supreme Court has acknowledged "its traditional reluctance to impose constitutional constraints on ordinary evidentiary ruling by state trial courts."  See Crane v. Kentucky, 476 U.S. 683, 689 (1986).

In deciding if the exclusion of evidence violates the due process right to a fair trial or the right to present a defense, the court balances the following five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense.  Chia v. Cambra,360 F.3d 997,1004 (9th Cir. 2004); Drayden v. White, 232 F.3d 704, 711 (9th Cir. 2000).  The court must also give due weight to the state interests underlying the state evidentiary rules on which the exclusion was based.  See Chia, 360 F.3d at 1006; Miller v. Stagner,757 F.2d 988, 995 (9th Cir. 1985).

Because there is no reasoned state opinion that addresses this claim, the court must conduct "an independent review of the record" to determine whether the state court unreasonably applied clearly established federal law.  Himes v. Thompson,336 F.3d 848, 853 (9th Circ. 2003).

Petitioner claims Officer Rodriguez's testimony would have advanced the defense theory that Zewdu was the dealer and she went to the petitioner to exchange Officer Harris's marked bill for unmarked change, and not to purchase drugs.  In order to advance such a defense, Officer Rodriguez's testimony would have to show that Zewdu had knowledge of undercover officers and marked currency.  An examination of the record reveals no information exists to show Zewdu knew a marked bill was used in her prior arrest.  Thus, the evidence falls short of establishing that as a result of her previous arrest, Zewdu was familiar with undercover police practices.  (RT 259-279.)  Absent specific evidence to support this defense theory, the details of Zewdu's prior arrest were not relevant to the case at bar.  The reliability of the evidence is not in issue.  While the evidence was capable of evaluation by the trier of the fact, the offered testimony was not the sole evidence of Zewdu's familiarity with drug dealing generally.  The jury was informed of Zewdu's previous drug conviction,

indicating she was capable of engaging in drug sales.  The evidence also did not constitute a major part of the attempted defense.  While it provided greater detail about Zewdu's past arrest and conviction, it would not have shed any additional light on the defense theory.  In balancing the five factors pertinent to the due process analysis, the Court finds that the exclusion of evidence did not violate petitioner's due process right to a fair trial or present a defense.  As a result, the Court of Appeal's decision was neither contrary to nor an unreasonable application of clearly established federal law.

### 2. Right to a Trial by Jury

Petitioner claims the trial court violated his constitutional right to a jury trial when it imposed a life sentence as punishment for having rejected a pre-trial offer.  It is well settled that an accused may not be subjected to more severe punishment simply because he exercised his right to stand trial.  United States v. Capriola, 537 F.2d 319, 321 (9th Cir. 1976); United States v. Stockwell, 472 F.2d 1186, 1187 (9th Cir. 1973).  The "courts must not use the sentencing power as a carrot and stick to clear congested calendars, and they must not create an appearance of such a practice." Id.

Petitioner was originally charged with only one prior strike conviction, and offered a six-year plea bargain.  The prosecutor explained she had in the intervening time discovered another prior strike and would seek to amend the information if petitioner refused the plea bargain.  (RT 3-5.)  This would in effect qualify petitioner for a sentence of 25 years to life under the Three Strikes Law if found guilty.  The record also reveals that the trial judge also advised petitioner of his rights and the consequences of refusing the bargain and petitioner indicated he understood, and declined to accept the offer.  (RT 5-6.)  The prosecutor subsequently amended the information to allege two prior strikes for robbery and assault on a peace officer, after which petitioner admitted the prior strikes.  (CT 76-83, 86-90; RT 312.)

Following his jury conviction, defense counsel made a motion to strike petitioner's prior strikes.  In California, a sentencing court has the discretion to strike prior convictions, even if the case is charged under the Three Strikes law.  People v.Superior Court (Romero), 13 Cal.4th 497 (1996).  In response to defense counsel's argument that petitioner was not

9

given an opportunity to rehabilitate himself, the trial court noted that the two strikes were serious and violent, and the petitioner was on parole when the current offense took place. The court also commented that "the defendant made life choices he did not have to make. He cannot blame the Department of Corrections or associate for life choice the defendant has made. Life choices here are assaulting a peace officer, firefighter, or second degree robbery." (RT 427.)  The trial court denied the motion to strike one or both strikes.

The appellate court relied upon state law in holding that the court was quite clear the "life choices" that led defendant to his sentences were the commission of certain crimes, not his decision to stand trial. (Slip Op. at 14.)  When the state court only considers state law, the federal court must ask whether state law is contrary to clearly established governing federal law. See Lockhart v. Terhune, 250 F.3d at 1230.  The appellate court's holding was not contrary to federal law, as the record must "affirmatively show that the court sentenced the defendant solely upon the facts of his case and his personal history, and not as punishment for his refusal to plead guilty." Stockwell, 472 F.2d at 1188.  As noted by the Court of Appeal, the trial court's reference to petitioner's "life choices" referred to his prior felonies, and not to his choice to exercise any constitutional right.  Here, the trial court considered the nature and circumstances of petitioner's recidivism, and on that basis sentenced him under the Three Strikes to 25 years to life.[3]  Because the record shows no substantial and compelling mitigating circumstances, the trial court sentenced petitioner based on the facts of his case and his personal history, and not as punishment for his decision to stand trial.  Thus, the state courts' denial of the claim that the trial court punished him for exercising his right to go to trial was neither contrary to or an unreasonable application of federal law, and petitioner is not entitled to habeas relief on this claim.

---

[3] The appellate court notes it was a prosecutor, not the trial court, that elected to charge petitioner with the additional prior strike conviction that made him eligible for the 25 years to life sentence. Petitioner voluntarily refused to accept the plea bargain knowing the prosecutor intended to amend the information to include petitioner's prior strike conviction, which would completely alter the length of a potential sentence. Thus, at the time he declined the offer, the circumstances of petitioner's potential sentence were clear.

10

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file and terminate all pending motions.

**IT IS SO ORDERED.**

Dated: July 9, 2007

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE